Now, both sides ready to proceed? Okay, there is an appeal and a cross-appeal. You have indicated to the deputy how you wish to articulate your time with respect to your appeal and then response, etc., to your cross-appeal. Is that correct? That's correct. Okay. Then, Mr. Mena. May it please the Court, Ronald Mena, on behalf of Helen Cross, I believe, Linda Sonnen, in her capacity as successor trustee to the London Ostrom Irrevocable Trust. The July 16, 2018, order at issue did several things. In finding paragraph 1, it found in personam jurisdiction over the trust. Importantly, in Decretal Paragraph A, it implicitly found that the guardianship estate owed Lori Burge $56,000 for caregiver payments, despite not hearing any evidence. Secondly, Decretal Paragraph A, implicitly determined that the trust owed this amount to the guardianship estate. And three, required the guardian to pay Lori the $56,000. And it's those first two steps, Judge, which are ignored by my opponent, because without a finding of any monies being owed to the estate or being owed to Lori by the estate, then the trust has no obligation to the estate. So if you ignore that first part, his argument makes sense. But once you understand that, and I'll get to that in a minute when we talk about subject matter jurisdiction, you'll see why the Court oversteps its bounds. And finally, in Decretal Paragraph B, the trial court properly denied the request for attorney's fees. Did the trust have obligations to the estate through the settlement agreement that was reached years before? The settlement agreement in Paragraph 6 said that the funds currently held will be It didn't say that it had to directly pay to the estate. It really was silent as to whom the trust was obligated. Certainly, there was no question that the trust did make payments on a regular basis to the guardianship estate for the use and care of Gene Ostrom. So the trust operated as if it was under the court order under the settlement agreement, correct? Well, the court order just said we approved this family settlement agreement. The way that it was, it was as a matter of convenience. The trust could have directly paid, could have been presented bills and directly paid it, or because the guardian had to make annual accountings, it was much easier just to pay the money to the guardian, and then for the annual accounting of the court since, as you're well aware, the guardianship judge is ultimately responsible for the award, and so that just made better sense as the practice is required under the Probate Act. But there was nothing which specifically obligated the court order to do it the way that we did it. The first issue is whether or not there was interest on the jurisdiction of the estate. The trust at all times has said there is no jurisdiction over us. It was never served with summons, so the question is here one of voluntary submission. The settlement agreement is very clear that we're not otherwise obligating ourselves to the jurisdiction of the court. Prior to that time, there were motions pending in which the trust told the court we don't belong here. You have no jurisdiction over us. We were contesting jurisdiction. With the family settlement agreement, there was no need to involve the trust in the guardianship estate, and thus paragraph 8 merely reflected what everyone agreed, which is now we have a process in place. We can make sure that the money in the trust is going to be used for Gene's care and benefit. The trust doesn't have to be here. It doesn't have to be before the court. We don't have to fight over this. That's what the family settlement agreement is. The word otherwise is a pretty important word there. And so basically the trust was saying we are submitting ourselves to the jurisdiction of the court for purposes of the payment of this money for Gene's care, but we're not otherwise submitting to the jurisdiction of the court, which was borne out by the order, I don't know if it's Judge Countryman or whoever, initially told the trust they had to make an accounting to all these people, and then somebody came in and said, wait, we didn't otherwise submit to the jurisdiction of the court to make an accounting to the whole world, and the judge said you're right. So it's a two-part question, Your Honor, and the first part is the otherwise has to be looked at in terms of the context of what was going on. At that time, pending in the circuit court was our objection to in-person jurisdiction. And it says, look, we have already told the court, we are not subject to it. This agreement in and of itself is not going to submit us to the jurisdiction because as of today, we otherwise, there is otherwise no jurisdiction over us as set forth in our motion to dismiss. Now, the second part with respect to what happened in 2015 is the trust was filed. We said, Judge, we want you to file an order, just reconsider it and reverse your ruling because the trust has not submitted itself to the court's jurisdiction, period, end of sentence. There was not an emphasis on the word otherwise. The briefs, the objection is very clear. It says there is no jurisdiction over the trust, period, end of sentence. Additionally, if you do find jurisdiction in the alternative, which you can argue under the Code of Civil Procedure, the Trusts and Trustees Act is very clear that the only people entitled to any sort of accounting are income beneficiaries, of which Lori Burge is not one. The only income beneficiary was Jean Ostrom, the ward. She wasn't entitled to the documents. So the first argument was we didn't, there was no jurisdiction, period. The judge in his order said, I agree with the objections. So my assumption is the judge agreed that there was no jurisdiction, and that even if there was, she still wasn't entitled to it anyway. The order is not clear, but the first objection in and of itself was there's no jurisdiction over the trust. The use of the word otherwise was not determinative, was not argued. It was a pure jurisdictional, lack of impersonal jurisdiction question. Was the trust court ordered on December 19th of 2013 to make quarterly $50,000 payments to the estate? Yes, there was a consent decree that was entered. Then a year and a half later, in May of 2015, we have the objections to jurisdictions being sustained. So with all that history, the court still found no jurisdiction. And there's nothing that happened since May of 2015, which has been used as showing that somehow the court or the trust has voluntarily submitted to the in-persona jurisdiction of the trial court. So if you have any more questions about in-persona, I'd like to move on to subject matter jurisdiction, which I think is sort of the beat of the argument. So assuming there is in-persona jurisdiction, the order still was incorrectly entered. As I said, the trial court implicitly found that the guardianship estate owed Lori $56,000 for caregiver fees. It's not in the order. But it must be a basis for the order, because without that claim being decided, there's no way that the trial court's going to order the trust to pay any monies to the guardianship estate to then be paid to Lori. And this claim was improper. The Probate Act is very clear under 24-12 and 24-19 of the Probate Act. Once a board dies, the guardianship court can do two things. One is ordinary administration. Let's take care of the representatives' fees. Let's take care of the attorney for the guardians' fees, the GAL fees. Just ordinary, everyday administration. And the other thing, especially under 24-19, titled Administration of a Deceased Board's Estate, is all it can do is collect assets to be used to decide claims in a decedent's estate. Because in a decedent's estate, claims are paid by their classes. There are seven classes under the Probate Act here. We're talking about the Probate Act. This is not two separate acts. This is one unified act. It's been in place since 1975. And under that act, 24-12 and 24-19 are abundantly clear. GEDIS did not base its opinion on the fact that somehow there was the guardianship section limited the subject matter jurisdiction. It based its opinion on 24-12 and 24-19 that says, once the ward dies, what is a justiciable issue changes fundamentally because in a guardianship, the whole point is to take care of the ward. The trial judge is there to take care of the ward. And once the ward dies, the guardianship is ended. There's no one to take care of it. The relationships between the ward and any creditor fundamentally changes because there's no one there. Did we misread GEDIS in our Pellico holding? Well, with all due respect to Pellico. With all due respect, that usually means there's no one coming. Oh, no. Justice McClaren's opinion is not a model of clarity. And Pellico never discusses 24-12 or 24-19. Not at all. Not in the footnote. Not anywhere. It focuses on 11-A-18-D, which says that where you have a trust for which the ward is a beneficiary, before anything can happen with respect to that trust, the guardian, again, not a creditor, not a daughter, the guardian must come into court with notice, seek relief, and then and only then, if the trust is fourth court and everything else is fine, can the guardianship court enter an order with respect to a trust for which the ward is a beneficiary. That's what it discussed. It was whether or not 11-A-18 limited original jurisdiction. And the question here really isn't original jurisdiction. There's no argument by us. There's no contention that when this case was filed, the circuit court in King County had original jurisdiction over this type of matter. There's no question about that. We're not arguing that. This case was properly filed or properly entered the orders, finding that Gene was competent, appointing the guardian, administering the state. The question is what happens because the Constitution says original jurisdiction over all justiciable matters. The entire phrase must be remembered. All justiciable matters. When the ward dies under the Probate Act, automatically the guardianship ends. That's 24-12. So the question is what's a justiciable matter? Yet, Palico did not take that into account. It focused on a completely different section. Did the trial court have jurisdiction to enforce the agreement even after Gene's death? I mean, if you look at this from, I guess, the other side's perspective, you have care that's given pursuant to an agreement. The payments were never terminated. They were just suspended. So she gave this care. She should get paid. And all this is is an enforcement of the agreement that was entered into well before the ward's death. Because of the ward's death, a claim against the state, and that's what this is, this is a claim for $56,000, cannot be decided other than in a decedent's estate. This is not an ordinary administration. This is something else. This is completely different. None of the cases that we have that were argued in any of the briefs deal with a claim. There is, and forgive me for not remembering the name of the case, one dealt with a claim that a court improperly exercised jurisdiction. That's not the issue here, post-death. That's not the issue. The issue here is, I owed money. I want to be paid money. I now want to be paid money today. The Probate Act says once a ward dies, those claims go to a decedent's estate because they have to be paid in a certain order. She's a seventh class, the last to get paid. By doing it in a guardianship, she now cuts out the seven classes, steps ahead of everybody, and says, I get paid first. That's clearly not the intent of the legislature. And her argument, if you agree with it, would require this court to ignore or hold that 2412 and 2419 improperly limit the court's subject matter jurisdiction. And that's never been argued by anybody. But 2412 and 2419 are clear. The trial court on a ward's death is limited in what it has discretion to use. Even if there is subject matter jurisdiction, the Probate Act, and we argue this below, we argue this in our brief, even if there was subject matter jurisdiction, the trial court still couldn't enter this order because the structure of the Probate Act itself says no, claims must go in a decedent's estate because claims have to be paid in their proper order. Is there any mechanism then for enforcing that settlement agreement? There would be a claim in the decedent's estate. That's it only? Yes. We have no more questions, Your Honor. Okay. You will have a chance to reply. Thank you, Your Honor. Thank you. May it please the Court. Good morning, Your Honor. Good morning. Counsel, my name is Philip Piscopo and I represent Lori Virge, the daughter of the now-deceased ward in this matter. Your Honors, in this case, Lori Virge took care of her disabled mother for 10 years. And she did it pursuant to a settlement agreement that was entered into by all interested parties, including the trust. And the trust was established by Gene's mother, I'm sorry, Gene's father, to take care of her. May I start over? And in that settlement agreement, it was agreed in writing and a court order that the trust would pay for her care when all the other assets of Gene were exhausted. The trusts of Gene's were exhausted. The trust did pay for that care over four years. And now the trust walks and attempts to make all sorts of excuses as to why it should not be held to due when it agreed to do. Well, how about legally? I mean, was this actually a claim against the estate made by your client? It was not a claim against the estate made by our client. And our pleadings clearly reflect that. The pleadings ask that they say in the reasoning part that the trust agreed to pay for the care of Gene. The trust now has assets to pay for the care of Gene, and therefore the trust should be required to pay for the care of Gene. So pursuant to the settlement agreement, the claim is against the trust and not the guardianship estate. That's correct, Your Honor. And the only role that the guardian had in that petition was, as Mr. Mena ably put it, was the cleanup work, the administration after the ward's death. So that's the only role that she served. The claim was never raised against the estate itself. It was raised against the trust and asked the trust to pay the money, not the estate to pay the money. Now, I can go on with the subject matter of jurisdiction, or I can start with the infersonum. Actually, I'll start with the infersonum. The law here is clear. Any action by a party that recognizes the case as being in court will amount to a general appearance, waiving all jurisdictional defects, unless that appearance was for the sole purpose of objecting to jurisdiction. That's the case of Ward v. Hubert from 1957, in re-estate of Burmeister, in re-estate of Ahearn. In both Burmeister and Ahearn, the executor-slash-trustee pretended to wear one hat in court, but both courts in those cases found that they were really acting on behalf of both trust and the estate. Did the trial court in 2015 rule that there was no infersonum in jurisdiction over the trust? It did not, Judge. Well, the order is unclear. The 2015 order, in order to understand it again, I don't know how it came about. It came about where the court really sua sponte, I guess at an oral suggestion, but that suggestion isn't really in the record, that the trust should be required to provide documents to all parties. And the trust, and I think appropriately, said, wait a second, we never agreed to provide documents to all parties in the trust. And under the law, trusts, and under this trust, only the beneficiaries are entitled to those documents. So therefore, Judge, you should not provide, you should not order that the trust documents be provided to all parties. And by the way, we didn't submit to the jurisdiction of the court for that purpose. And the court vacated the order. The court reconsidered, essentially most reconsidered, the court reconsidered and vacated the earlier order. Requiring 10 greater documents. That would require the trust, other parts of the order were left intact, but the part requiring the trust to provide documents was vacated. What does vacate mean? It means it's treated as if that order never existed. The trust today argues that that was a final order under Rule 304B, but it wasn't, all it was is a vacation of a prior order. It didn't do anything else besides that. But that doesn't speak to any issues as to whether the trust was properly before the court for purposes of the settlement agreement. In a probate estate, there could be a whole bunch of things that could happen, and I recited some of those in my brief. Those would include a citation of discovered assets, or some order, rule shall pause, anything like that. It could be a whole bunch of things, and when those things are finalized, then an appeal can be taken under Rule 304B. But that's not what happened here. All it was was a vacation of an order. It was simply nothing else, and it didn't rule on whether the trust had submitted to the jurisdiction of the court for all purposes. And, in fact, the record in many, many places reflects that it did. And the first one is the settlement agreement. The settlement agreement that was entered all the way back in 2009. And that settlement agreement arose because all the parties, including the trust, went to the trial court and asked the trial court to help it resolve all the disputed issues between them. And the trial court helped them. It noted that there were several pretrial conferences. And that settlement agreement recites Linda Soonan, individually and in her capacity as successor of the trustee of the Leonard Trust, or irrevocable trust, acknowledges and stipulates that the funds currently held in the trust shall be retained for the benefit of Gene Ostrom during her lifetime and shall be available for Gene Ostrom's care and support when the funds from the sale of the Lincoln Shire condo and other funds are exhausted. That is a clear indication that the trust is making this agreement. But the trust doesn't want to focus on that. Oh, by the way, the trust got something out of that. They got the agreement that nobody would go after the trust until Gene's other funds are exhausted. And then Section 8, it notes that we do not otherwise submit to the jurisdiction of the court. And, Your Honor, it's correct to focus on the term otherwise. There's actually more in there than that, even than otherwise. It also says we're not submitting to the jurisdiction of a derogatory court beyond the parameters of the acknowledgments and stipulations contained herein.  They are submitting to the jurisdiction of the court. And acknowledge and stipulate is actually specifically stated in Section 6. And so the settlement agreement shows that with respect to that, even if not with respect to all things, the trust was in fact submitting itself to the jurisdiction of the court. And notably, the trust focuses on its motions to dismiss for lack of jurisdiction, but those never got adjudicated. They were under moot by the settlement agreement. This was not an inadvertent waiver. And that's all the more recent cases say is that the changes in 2000 to eliminate the distinction between special and general appearances, that was all meant to avoid an inadvertent waiver of jurisdiction. This was not inadvertent. This was a specific document that was put in here and specific language put in here submitting to the jurisdiction of the court. If Linda, as trustee, wanted to say, nothing in this agreement shall constitute any form or consent of jurisdiction and nothing shall be construed that way, that would be really easy to have written into that agreement. Instead, we have this tiptoeing language that says, I'm sort of submitting, but not. And it doesn't take much to submit yourself to the jurisdiction of the court. And we submit that the trust did that. And if there were any doubt, the trust's consent to the order requiring it to pay funds in December of 2013 makes it clear. Mr. Connelly, on behalf of the Guardian, filed a motion asking the court to order the trustee to release $50,000 each quarter commencing January 1, 2014, because the condition of the settlement agreement that Gene's other funds have been exhausted has now been fulfilled. And when the case came to court, there was an agreed order. Counsel for Linda was present. No objection anywhere to jurisdiction. Counsel suggested that this could have been done a number of ways, but this is the way it was done. The way it was done was that an order was entered without any objection by the trust that the trust is ordered to pay Christine Adel $50,000 every quarter. And the trust did do that every single quarter in order to pay for Gene's expenses, not just the ones for Lori, but for all of Gene's expenses. This is not a case where the Guardian asked the trust to provide some funds, something outside of court. This was actually done in a court proceeding, commanding the trust to do something. And incidentally, it also confirms that the intent of the parties all along was that the trust would be submitting to the jurisdiction of the court when the settlement agreement was made. And then after that 2015 order, that really didn't do anything other than vacate a prior order, the trust did more things to submit itself to the jurisdiction of the court. And as I was preparing the brief, I was really struck by the trust's response to Linda's first motion to resume the caregiver payments, and that was done in January of 2018. In the record, it's C-2012-2013. Paragraph 13, it says, First, the trust doesn't grow clearly. Or Linda pretending to be herself, but we submit really acting on behalf of the trust. She says, the trust is now before the court, and then she goes on to say, there needs to be a proposed care plan, and if any caretaker expenses are to be paid to the Burges, they will need to be offset by the amount the Burges owe to the trust. That's an affirmative request for relief. And again, in paragraph 15, The ruling must be deferred in order to give the Burges and Linda time to see if an agreement can be reached on what money is owed to the trust as a result of the short sale. The trust is affirmatively asking the trial court to do an offset from what the Burges claim is owed to them. How anybody can ask for that and then claim I'm not really before the court. There's not a single case anywhere that has ever held that. In fact, Lord versus Huber holds the opposite. You can't ask the court for affirmative relief and at the same time deny that there's any jurisdiction, but somehow the trust believes that she can do that and do it in the same paragraph and the same pleading. For all those reasons and additional ones that I put in my brief, the trial court and now this court, of course, has jurisdiction over the trust to enter the order that it did. With respect to the subject matter jurisdiction and whether jurisdiction remained as to the trust after Gene's death. There's been a lot of discussion in the state of Pellico, the state of Austin, and other cases, primarily in this court but in other courts as well, questioning whether the case of Ingrid Gavis was effectively overruled by the Belleville Trio. I would submit that this court doesn't have to really answer that question at this time. Maybe it would be appropriate for another case, but it doesn't have to be answered at this time. The Gavis case was just a guy who believed that a now-deceased ward owed him money. And he went and he asked the guardianship court after the ward's death for caregiving expenses that were never ordered by the court or set up or sued to a guardianship. He just took care of her, felt he was owed money for it. And as our Supreme Court says, you can't do that. You're supposed to bring that in a probate estate against the now-deceased ward. That's not what this case is. What this case is is a settlement agreement that's specifically provided by the guardianship court for the care of Gene by Lori Burge and by other people as well and provided that the trust is to pay for that when Gene's other expenses were exhausted. And that's what Lori was asking the guardianship court to do. And she first started asking for that before Gene's death. The original motion was filed in January of 2018. Gene didn't pass away until April of 2018, and then the motion was amended. But the court still retained jurisdiction over the trust. Is this dispositive that the request was made prior to Gene's death? I don't know if it's necessarily dispositive. It could be dispositive. Let me say, if it went the other way, would that undermine your position? I don't think it would, especially since the case of In Re Estate of Wellman, which is an Illinois Supreme Court case. In that case, the guardian sought fees after the ward's death. There was a guardianship estate where the ward was alive. The guardian incurred, I believe it was attorney's fees. And then the ward passed away, and the Supreme Court of Wellman said, you can still seek those fees even after the ward is dead. Because it's for work done prior to the death. Exactly. That's the dispositive for line in the sand is when the work was done, not when the request for payment was made. Exactly. Okay. And so you can read Wellman and get us together and harmonize them by doing that. I mean, that would be almost any creditor, wouldn't it? I mean, almost any creditor, if something's done before the ward dies, then they're seeking payment afterward. No, no, it's different. It would be different from, let's say, a phone bill. Or, indeed, the caregiving expenses not done under the auspices of the guardianship court. That's just an ordinary creditor who claims that the ward owes him money. But in Wellman, the attorney's fees were actually incurred pursuant to the guardianship. And in our case, our caregiving expenses were actually incurred pursuant to the guardianship and pursuant to a settlement agreement that was entered by the guardianship court. So it's part of the cleanup administrative duty that's provided for in 24-12 and 24-19. It's not just some other claim hanging out there. And, in addition, there are other cases that support this notion. The state of Ahern. The guardianship awarded fees against the third party, which happened to be a trust, and allowed it to be enforced after the ward died. So that's what this case is really about. It's not, it's, the court doesn't have to decide, yeah, this is still good law. I'm not sure it is, but I can see it being, still being good law as long as it's confined to its facts, which is a freestanding claim brought against a deceased ward should be brought in the probate court. As far as the subject matter jurisdiction, it's a justiciable matter. The guy just brought it in the wrong form. That's brought in the guardianship court rather than in the probate court. And I think that's what the only Supreme Court found problematic in the Geddes case. It can easily be harmonized with everything else and construed to not really talk about jurisdiction, but rather the proper procedure. Finally, one thing that was not discussed at the, by Mr. Mena was the trial court's awarding of the caregiver fees. His brief suggested that the decision is not, is de novo, but it isn't. These kinds of things are done at the discretion of the trial court. And the only change was that the trust claimed in August of 2017 it didn't have the funds after Lurie, it didn't have the funds anymore to make those payments. Well, after the house was sold, the trust suddenly had over $500,000 again, and so Lurie petitioned the court to restart the payments and back to when they were originally suspended. Of course, he argued in the trial court that, and in the brief, that these funds weren't currently available, or whatever the settlement agreement said, the funds in the trust that were currently available. Yeah, that was, that argument's problematic as well. And the reason is the guardian indicated way back in 2009 that the trust only had $144,000. That's what it was in her report. But the trust paid out over four or five years, no, four years, over $400,000 to Lurie. So nobody could have construed it, including the trust, to mean that once the $144,000 is gone, then the trust is absolved of any further responsibility. And that's not how that care plan that noted the $144,000 also noted the $750,000 note. It did. It did. So either the $144,000 is not the limit of the trust responsibility, or the words funds currently in the trust are deemed to include notes, the note and the payments that were made thereon. Throughout the entire course of the case, the Burgess continued to make payments on that note. So that argument really doesn't hold water, primarily because that's not how the trust acted. That's not how the trust construed it in the course of performance of the agreement. So before you run out of time, you may want to touch on the attorneys' fees. Certainly. Certainly. The trust argument against our competition is simply that Lurie was not a court-appointed representative, and therefore she doesn't get fees. End of story. But that's not the law. Well, 27-1 and 27-2 just say an attorney for a representative and a representative are entitled to fees. The cases of Roselli, the estate of Burg, and Johnson all say that it doesn't matter if you're duly appointed by the court. What matters is did your work benefit the estate? How did your work benefit the estate? The work benefit is – As opposed separately and apart, pardon me, to benefit Lurie. Lurie's work benefited the estate by providing Jean – How did your – not your – How did the fees benefit the estate? The fees benefited the estate because the purpose of the settlement agreement was to provide that the trust is going to take care of Jean's expenses, not once the money runs out. And so our work to enforce that ends up saving the estate the entire $56,000 that we sought and what the trial court awarded. Otherwise, the estate wouldn't have those funds. And so therefore, by saving the estate the $56,000, our work benefited the estate. Whose work are we talking about here? Are we talking about Lurie's work or the attorneys for Lurie's work? Well, it's really both because Lurie's work benefited the estate by also saving it money, as Christine Adelman initially had indicated, that the costs of the care and the delivery expenses were very reasonable. And then on top of that is our work to enforce the settlement agreement also benefited the estate because it provided that the estate is not responsible for those fees. The trust, as provided by the settlement agreement, is responsible for those fees. Wasn't this simply a matter of Lurie? She was taking care of her mother, which is certainly a lot of work, but also getting paid for it. And then your actions are trying to get her payment for work that she did. Yeah. It could, yeah, it does benefit Lurie, but it also benefits the estate. There are things that benefit beneficiaries that can also benefit the estate at the same time. I'm just saying, if we're talking about this kind of balancing, aren't we talking about the discretion of the court and whether the court abused its discretion in not awarding attorneys' fees to help your client get money for work that she performed for her mother? Well, that's something that the trial court never reached because the trial court struck our fee petition altogether under the 27-2, the trust admission ruling. So it never really got a chance to exercise that discretion. I suppose the trial court could find they benefited the estate and they benefited Lurie. So we're only going to give half the fees, or we're only going to give three-quarters of the fees. The trial court never got a chance to get there because it decided that it couldn't award fees anyway. And that's what we asked the court to reverse and then remand to find out, for a hearing before the trial court, to find out if the fees are reasonable and whether they benefited the estate. But we never got that chance. And so, therefore, we ask that that portion of the trial court's rule be reversed and otherwise be affirmed. Do you have any other questions? Thank you very much. We will have another opportunity. Your Honors, if I may begin. Paragraph 6 of the settlement agreement is very clear, and it reads, and I quote, and this is at C783 and page 2 of our appendix. Linda Sun, individually and in her capacity as a successor trustee of the Leonard Ostrom Irrevocable Trust, acknowledges and stipulates that the funds currently held in the Leonard Ostrom Irrevocable Trust shall be retained for the benefit of Jean Ostrom during her lifetime and shall be available for Jean Ostrom's care and support when the funds from the sale of the Lincolnshire condominium referenced in paragraph 3 above and the funds in the joint account referenced in paragraph 4 above are exhausted. How that language says, hey, we're submitting ourselves to the jurisdiction of the guardianship court exists, I don't know. I don't see that anywhere in there. The suggestion that this language, which I just read, is an acknowledgment of the guardianship court, of the suit, and a submission is beyond me because it doesn't mention that. This is a settlement agreement for something, isn't it? It's a family settlement agreement to decide how to take care of land. But there was a case pending. There was a case pending. I have seen family settlement agreements that occur prior to this case. And this was presented to the court. This was presented to the court. At that time, Jean was already awarded the court, and no one could take any action without the court approval. And the court's order just says I've read it and I've approved it. It doesn't say I'm reserving jurisdiction to enforce it, that I'm doing anything other than acknowledging the parties, the family has settled their dispute, and we're now going to move on. Paragraph 8 makes it very clear that the trust doesn't want to be part of the guardianship proceedings. They don't want to be dragged in. We agree to do what we're going to do. We're out. Beyond the parameters of the acknowledgments and stipulations contained herein. Right. So if you read paragraph 6 the way you read it, then certainly I understand your argument. If you read paragraph 6 the way the opposing counsel reads it, then you've been ‑‑ this is another indication of submission to the jurisdiction, at least for purposes of the settlement agreement. But there's nothing in paragraph 6 which talks about the case. What it talks about is how are we going to take care of Mom? What assets and in what order are we going to use to take care of Mom? There's nothing in paragraph 6 which talks about the guardianship. Why even mention the trust then? Why is the trust in paragraph 6? So the ‑‑ as Ms. Coppola said, Gene's husband set up the trust to take care of Gene. And everyone's acknowledging that the purposes of the trust were going to be followed. And because there had been motions filed against the trust. The trust said we're not under the court's jurisdiction. This is page 783. There was a lot of motion practice that was going on in this estate. It was highly litigated. Obviously. Obviously. We're done. We're going to reach. We're going to have peace. And the trust had to be part of that because somehow Mom had to be taken care of. And everyone wanted Mom taken care of. And she was taken care of. So paragraph 6 just says here's how Mom's going to get paid. We've got assets which get paid first. And then once everything else is gone, the trust is going to come in and give its assets to take care of Mom. This could have been reached outside of court. There's nothing magical about this language. But it wasn't. I mean, the other way to accomplish what you're saying the parties really intended to do is just to come in and dismiss the entire proceedings and say we've reached an agreement by ourselves and nobody has submitted to the jurisdiction of the court. But they didn't do that. But they couldn't do that. Yes, they could. Well. You can always dismiss a suit. I mean. They aren't even going to have to bring that, not the family. None. I mean. Right. You're saying this is what everybody's intent was. But how else can you read paragraph 6 than to say the trust had to be part of that agreement? So here's the other way you're under. Okay. Fair enough. Is there were motions pending saying I want orders entered against the trust. I want it brought in here. I want this, that, and the other things. I want the trust right before the court at all times. And the agreement was, you know what? No. We're going to have. We figured out a way to take care of them out. We don't need the court to be involved. The trust is going to be outside. Dismiss the proceedings if you don't want the court to participate. But the trust came in and it was part of an agreement. I mean, how do we carve that line and say, you know, you're under our jurisdiction for these purposes but nothing else? I mean, how do I do that? So remember pending? The only thing that the trust had pending at that point filed was objections to jurisdiction saying, we know that Lori Burge wants to submit us to the jurisdiction and wants orders entered. We don't think that's proper. And in that context, this agreement says, outside of the court, without dragging the trust in, here's how the family agreed to settle this case. The court read it and approved it without retaining jurisdiction, without requiring annual accountings from the trust, without requiring the trust to do anything under the settlement agreement. And it really could have been accomplished. Grant, I understand that the guardian would have, once she's named a ward, the guardian would have to commit to dismiss the proceedings. Correct. The family couldn't do that. But clearly, couldn't the family, couldn't the trust say to the guardian, we have this agreement. We're not submitting it to the jurisdiction court. We're not presenting it to the court. You can approve it or not. And then the guardian could go to the court and say, we have an agreement with the trust, and not present the trust. I mean, the settlement agreement that was presented to the court, your client appears individually in that agreement and as trustee. Correct. Both as daughter and as trustee. Absolutely. That's correct, Your Honor. I don't believe that once a guardianship has been initiated and a ward has been found disabled, that the guardian can come in and say, you know, I've got a side agreement judge, and I think it's okay, and let's just go ahead with that and keep it out of the court. Because the trial judge is the person who's responsible for the ward, and the trial judge asks the guardian. So if the guardian does something and approves something, it has to be approved by the trial court. Let's talk about two other things, though. Sure. First of all, the December 19, 2013 order, ordering the trust to make $50,000 quarterly payments that the trust did for nine payments, $450,000 that paid out pursuant to a court order that the trust apparently had no obligation under the court order to do. That's number one. And number two, in response to the first petition, as counsel argued, filed by Lori, your request for an offset, that the trust be credited some of this money that she's owed. Right. So Lori can wear – I'm sorry, Linda Summitt can wear two separate hats, and she can act individually and act as a trustee in their very separate hats. Now, it's been very clear, whenever Linda has appeared on behalf of the trust, she's always said, as successor trustee. That was the second one. The first motion filed in January, if you look at it, only seeks relief against the guardian. The trust has nothing to do with that. There's no relief sought against the trust. The settlement agreement says part of the money being paid to the Burges is for the housing of Ginastra. The guardian, in her response to the first motion, said, wait, wait, circumstances have changed. We have to look at how everything is so that the amount that's being paid reflects what is happening today in 2018, not what was happening nine years ago in 2009. Linda had a similar objection, saying we have to look at the whole picture. Linda knows what's going on. She's a daughter. Everybody knew what was going on. Everyone knew about the mortgage and the note and the payments. This was not secret. So as a daughter, she could say, look, there is a limited pot of money that needs to be paid to take care of mom. We need to make sure that money is being used wisely. A daughter certainly has a right to sit there and say that and not be saying, well, you're acting as a trustee of a trust who's ultimately going to be responsible. She's acting as a daughter saying, I want mom taken care of in the best way possible. I want to make sure, especially now that Brightstar, who, by the way, is under the CARE plan, and I guess theoretically could come in under Mr. Pascova's theory as well, Brightstar went from $1,200 a month to $10,000 a month. So the CARE for moms, the cost has ballooned. We have a limited pot. It's got to be spent wisely. So, of course, the daughter is going to come in and say, look, let's make sure we're using the money where it's supposed to go. If housing costs have gone down, the payment to the Burgess should go down because that's a big component of what is being paid to them. That's certainly nothing to do with the trust. So her response is that of a daughter trying to make sure that the money is being spent responsibly and wisely and not of a trustee saying, yeah, I don't want to pay it. Yeah, that's right. Thank you, Your Honor. Any other questions? Did you have any comment on the fees? I'll give you a few extra minutes if you wish. I did, Your Honor, if only very briefly. Dinowitz, which we cited, is pretty clear. It says in a similar situation the attorney's fees that were incurred were not for the benefit of the estate. They were for the benefit of Lori. Mr. Pascopo has always appeared on behalf of Lori. And now all of a sudden he's saying, oh, by the way, even though I'm only appearing on behalf of Lori, I'm benefiting the estate. That's not the case here. It's very clear that what he did was to benefit Lori. And again, he ignores the fact that in order to say the trust owes the money, you must first find that the guardianship owes the money. And so it's really underlying a claim against the guardianship estate. So it can't benefit the guardianship estate because they're seeking money from the guardianship estate. And that's what the court order provides, is that guardianship estate is to pay them. So with that, Your Honors, I ask that the July order be referred, paragraph 1, finding 1 in decreed in paragraph A be reversed, and paragraph B be affirmed. Thank you. Counsel. Thank you, Your Honors. I know my reply is connected only with the attorney's fees part. The estate of Dinowitz case that Mr. O'Malley mentions is very interesting because in that case, the fees in question were incurred by the actual court-appointed guardians of the minors. They're a bunch of minors. They're like several grandchildren, and they allege that the grandparents had misused the minors' money by the time they reached adulthood. And the grandparents defended against those claims. They said, we did nothing wrong, and you shouldn't be sanctioning us or forcing us to pay back because we did nothing wrong. And the court in the Dinowitz case said, well, wait a second. Now you want fees for that defense. Well, that defense was defending your conduct against claims of, for lack of a better word, problematic expenses by the guardians themselves. And so those fees were clearly incurred to benefit the guardians as individuals and not to benefit the estates of those minors. And for that reason, the court denied those fees to a court-appointed administrator. I'm not an administrator. A court-appointed guardian. And so that really reflects the main crux of the question under 27-2 and 27-1, for that matter, is whether the work benefited the estate. And that's not what we have here. Here, our work as attorneys did benefit the estate because it saved the estate money, as I indicated earlier. It saved the estate the money by holding the trust to its settlement agreement. And incidentally, the trust itself agreed to pay the guardians' fees. And that was what we found out shortly after the initial hearing on the motion and our petition for the fees that was denied. We found that out, and that's when we brought the motion to reconsider. The trust agreed to pay the guardians' fees. But now they stand up here and say that we shouldn't be required to pay Lori's fees, irrespective of whether the benefit is the estate, because we're the trust. We're not the estate. It can only be sought against the estate, and that's simply not right. Because if it's sought against the estate, then the guardian should be looking to the estate to pay and not to the trust. But the trust doesn't mind that so much when it's the guardian, but does mind it when it's Lori for some reason. So you're lumping yourself in the same boat, if you will, as the guardian. Either you're both entitled to fees or neither of you is. Well, in the child court's discretion. But you see the distinction. Yeah, because Lori, in rendering care to Eugene, acted like my partner, Mr. Storm Malone, was called the pseudo-guardian. I call it informal guardian, which are kind of the same thing. But she assisted the ward. And the cases that I cited all provide that if you assist the ward, if you benefit the ward in some way, then the attorney's fees and the administrator's fees or representative fees can be awarded. And so by seeking to enforce a settlement agreement, we're just doing what all those other people in Berg, Roselli and Johnson have done, which is do work for the estate and seeking compensation for it and reimbursement of the attorney's fees that were necessarily incurred in the estate. And so for those reasons, we ask that the attorney fee, the denial of our attorney fee petition, be reimbursed and remanded for hearing on the reasonableness of our fees. Thank you very much. Thank you very much. Thank you both for extraordinary arguments this morning. And we are adjourned.